UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

TRAVIS G. DICKEY                                                                  Plaintiff

v.                                                                          Civil Action No. 3:16-cv-P712-RGJ

JOE RAPIER                                                                Defendant

\* \* \* \* \*

## **MEMORANDUM OPINION AND ORDER**

Before the Court is the motion for summary judgment (DN 48) filed by Defendant Joe Rapier. Plaintiff has responded, and Defendant has replied. The motion is thus ripe for consideration.

First, however, the Court considers Plaintiff's motion (DN 60) titled, "Motion Requesting to Give Response to Defendants' Reply to My Summary Judgment Response." Such an additional filing would be considered a sur-reply. Plaintiff does not attach a proposed sur-reply, but does lay out several arguments.

In response (DN 61), Defendant argues that Plaintiff's request to file a sur-reply should be denied. Defendant argues that the Federal Rules of Civil Procedure do not provide for filing a sur-reply; Plaintiff had ample opportunity to respond to the summary-judgment motion; sur-replies are disfavored; and the proposed sur-reply does not address new arguments or evidence but instead merely accuses Defendant and other Bullitt County Detention Center employees of lying.

Whether to permit a party to file a sur-reply is a matter left to the trial court's discretion. *See Key v. Shelby Cty.*, 551 F. App'x 262, 264 (6th Cir. 2014); *Eng'g Mfg. Servs., LLC v. Ashton*, 387 F. App'x 575, 583 (6th Cir. 2010); *Tanielian v. DaimlerChrysler Corp.*, 108 F.

App'x 386, 387 (6th Cir. 2004). "The Sixth Circuit has held that a district court does not abuse its discretion in denying leave to file a sur-reply where the opposing party's reply did not raise any new legal arguments or introduce new evidence." *Liberty Legal Found. v. Nat'l Democratic Party of the USA*, 875 F. Supp. 2d 791, 797 (W.D. Tenn. 2012).

An examination of Plaintiff's motion does not reveal any new arguments pertinent to the basis on which the Court will grant Defendant's motion for summary judgment. Accordingly,

**IT IS ORDERED** that Plaintiff's motion (DN 60) is **DENIED**.

The Court now turns to its consideration of the motion for summary judgment (DN 48) filed by Defendant, Plaintiff's response thereto (DN 58), and Defendant's reply (DN 59).

## I. FACTS

Plaintiff alleged in his complaint that on May 26, 2016, he was booked into the Bullitt County Detention Center (BCDC). On initial review pursuant to 28 U.S.C. § 1915A, the Court allowed Plaintiff's claim that he was strip searched on that date in violation of his constitutional rights to go forward against Defendant Rapier in his individual capacity. The Court also allowed his retaliation claim to go forward against Defendant Rapier in his individual capacity for placing him in segregation on July 12, 2016. All other claims were dismissed.

## II. ANALYSIS

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she

has the burden of proof. *Id.* A moving party with the burden of proof who seeks summary judgment faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (internal quotation marks, citation, and emphasis omitted). The party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. "Accordingly, summary judgment in favor of the party with the burden of persuasion 'is inappropriate when the evidence is susceptible to different interpretations or inferences by the trier of fact.'" *Green v. Tudor*, 685 F. Supp. 2d 678, 685 (W.D. Mich. 2010) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999)).

**A. Exhaustion of administrative remedies**

Defendant first argues that he is entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies with respect to the two remaining claims.

In particular, Defendant's summary-judgment motion states that the Kentucky Department of Corrections (KDOC) has promulgated an Inmate Grievance Process at CPP Section 14.6, "which sets forth the steps that inmates must pursue in order to properly file a grievance." According to Defendant, under CPP 14.6, an inmate must file a written grievance seeking an informal resolution with the grievance coordinator within five working days; if not satisfied, the inmate must submit a written request to the Grievance Committee seeking a hearing; if not satisfied, the inmate must appeal to the warden; if dissatisfied with the Warden's decision he must appeal to the KDOC Commissioner.

3

Defendant does not explain or offer evidence to show that the KDOC's grievance procedure is in fact the grievance procedure at BCDC. And, a 2012 decision from this Court describes the BCDC grievance policy as follows:

> Inmates are allowed to submit grievances. A grievance form must be requested from an officer and submitted in writing. The grievance will advance through the ranks until a satisfactory resolution is achieved. The final step will be action from the Jailer, if that is unsatisfactory, you may write to Dept of Corrections, Director of Local Facilities, PO Box 2400, Frankfort, KY 40601.

*Gifford v. Bullitt Cty. Jail*, No. 3:11-CV-P118-H, 2012 WL 1143670, at *2 (W.D. Ky. Apr. 4, 2012).

Under the Prison Litigation Reform Act (PLRA) which applies to suits, like this one, by prisoners concerning prison conditions, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

An inmate's case may be dismissed for failure to exhaust where it is shown that the inmate did not properly exhaust. *Woodford v. Ngo*, 548 U.S. 81, 93-95 (2006). To "properly" exhaust means that the inmate "'complete[d] the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford v. Ngo*, 548 U.S. at 88). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*.

Defendant bears the burden of proof on the issue of exhaustion. Because Defendant has not shown definitively what the BCDC grievance policy is, he does not meet his burden of proof on this issue.

**B. Claims on the merits**

*1. May 26, 2016, strip search*

Plaintiff's complaint alleged that on May 26, 2016, Defendant Rapier strip searched him and then immediately illegally strip searched him a second time more thoroughly without probable cause in violation his Fourth Amendment rights. In particular, he alleged that Defendant Rapier violated his rights as follows:

> when he illegally searched me for the second time. Officer Rapier stated 'he thought I had been a victim of rape.' This was an unreasonable search nor did he have probable cause to strip search me for the second time. He stated that he wanted to have me checked out by medical staff which never happened. Officer Rapier went outside his professional guidelines as a jail deputy and used abusive official conduct.

Defendant argues that under *Bell v. Wolfish*, 441 U.S. 520 (1979), the routine strip search of a convicted prisoner is constitutional even in the absence of probable cause. He states that it is BCDC policy to strip-search all inmates being booked into the facility for charges related to drugs. In support, he attaches the affidavit of BCDC Jailer Martha Knox. Jailer Knox avers that standard BCDC procedure is to strip search inmates being booked on drug-related charges. She also avers that it is standard BCDC procedure to strip search inmates after being transported from another facility.

Defendant argues that Plaintiff does not contend that the policy of strip searching inmates with charges related to drugs is a constitutional violation but instead contends that Defendant violated the constitution by conducting a second, more thorough, strip search immediately after the initial search. He points to Plaintiff's deposition testimony as follows:

5

> Q. Thank you. Describe for me, the best way that you can, the first . . . strip search with as much detail as possible.
>
> A. Just a normal routine strip search, took your clothes off, turned around, and squat and cough.
>
> * * *
>
> Q. Okay. Describe for me how the second strip search occurred.
>
> A. I took my clothes off, he had me turn around, squat and cough again, the next time he placed his hands on my behind.
>
> Q. Okay.
>
> A. And that was -- that was it. . . .

Depo. of Plaintiff, p. 27, 33; Exh. A to DN 48.

In response, Plaintiff asserts that Defendant "touched me and strip searched me twice for no justifiable reason other than because he's a Corrections Officer and feels he can do what he wants."

In reply, Defendant argues among other things that Plaintiff provided no substantive response to Defendant's contention that "the purported unnecessary performance of an otherwise reasonably conducted strip search does not rise to the level of a constitutional violation."

Under *Bell*, routine strip searching of pretrial detainees is not "a *per se* violation of the Fourth Amendment prohibition against unreasonable searches and seizures." *Mills v. City of Barbourville*, 389 F.3d 568, 578 (6th Cir. 2004) (holding that the fact that male guard accidentally saw female inmate during strip search was not a constitutional violation in the absence of evidence that the normal search policy was unconstitutional or that it was carried out in an unconstitutional manner); *see also Foster v. City of Detroit*, No. 03-75170, 2006 WL 8431443, at *2 (E.D. Mich. Jan. 23, 2006) (finding that jail's policy of strip-searching all detainees held on felony charges served a legitimate governmental purpose under *Bell*). Under

*Bell*, each case "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it occurred." *Mills*, 389 F.3d at 578 (quoting *Bell*, 441 U.S. at 559).

Other than his conclusive assertion that Defendant strip searched him for "no justifiable reason," Plaintiff offers no evidence that either of the strip searches were not done according to BCDC policy or that a policy of strip searching those charged with drug crimes is not legitimate under *Bell*.[1] Therefore, the Court finds that Defendant has met his summary-judgment burden on this claim.

### 2. July 12, 2016, segregation

Plaintiff's complaint alleged that, after he reported Defendant's alleged sexual misconduct in conducting the second strip search, Defendant retaliated against him on July 12, 2016, by leaving him in segregation, where Plaintiff was told that he had been placed "due to 'no bed space.'"

To state a First Amendment retaliation claim, Plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

Defendant does not dispute that Plaintiff's reporting of Defendant's allegedly improper actions was protected conduct but argues that Plaintiff cannot show that Defendant took any action, much less adverse action, against him because Defendant did not make the decision to

---

[1] Defendant does not supply evidence that Plaintiff was booked into BCDC on May 26, 2016, on drug-related charges. However, Plaintiff does not contend that he was not.

place Plaintiff in administrative segregation; instead, the decision was made by Deputy Courtney Crosby. Defendant attaches the affidavit of Deputy Crosby, who avers that on July 12, 2016, she was working at the booking desk when Plaintiff was booked in after being transported to Jefferson County. She further avers that, at that time, there were no beds available to place Plaintiff in a state cell; that due to this unavailability she booked Plaintiff into a segregation cell per BCDC policy; and that Plaintiff was removed from segregation as soon as possible in compliance with BCDC policy.

Defendant has offered evidence that it was another officer who was responsible for placing Plaintiff in segregation. Plaintiff offers no evidence to support his contention that Defendant was responsible for placing him in segregation. Therefore, Defendant has carried his burden for summary judgment in his favor on this claim.

### III. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS ORDERED** that Defendant's motion for summary judgment (DN 48) is **GRANTED**.

Date: December 18, 2018

Rebecca Grady Jennings, District Judge
United States District Court

cc: Plaintiff, *pro se*
    Counsel of record
A961.009

8